(C. D. 1318)

EMERY, HOLCOMBE & BLAIR *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided April 6, 1951)

*Emery, Holcombe & Blair* (*Amasa M. Holcombe* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The problem which confronts us here is whether or not the collector of customs properly exercised his authority pursuant to applicable provisions of law in excluding from entry or delivery one "Seigneur" cigarette lighter imported through the mails by the plaintiff.

Plaintiff challenges the action of the collector who refused to permit entry or delivery of the imported article to the plaintiff because he believed that it infringed reissue patent No. 19023 and that he deemed its entry prohibited by T. D. 47001, 65 Treas. Dec. 659, as amended by T. D. 51238, 80 Treas. Dec. 92.

In order to have a clearer perspective and to gain a better understanding of the basic reasons which motivated the collector in reaching his decision, it becomes necessary to explore the background of the Treasury decisions above cited.

T. D. 47001, *supra,* sets forth an order of the President, dated March 17, 1934,[1] issued pursuant to the provisions of section 337 of

[1] Pursuant to a complaint filed by the Art Metal Works. Incorporated. of Newark, New Jersey, asking relief under the provisions of Section 337, Title III, Part II, of the Tariff Act of 1930, from alleged unfair methods of competition and unfair acts in the importation and sale of certain cigar lighters, the United States Tariff Commission made an investigation and afforded appropriate hearings to parties interested under the provisions of subdivisions (b) and (c) of that Section. On January 4, 1934, copies of the Commission's findings were mailed to importers or consignees. The time for an appeal to the Court of Customs and Patent Appeals for a review of the findings of the Commission has expired without an appeal having been filed.

By order of the President dated July 6, 1933, under subdivision (f) of Section 337 of the Tariff Act of 1930, certain cigar lighters were forbidden entry into the United States, except under bond. The record of the hearings and findings of the Tariff Commission has established to my satisfaction the existence of unfair methods of competition or unfair acts within the meaning of said Section 337. I therefore direct that you exclude from entry into the United States the following cigar lighters, whether or not attached to or forming parts of or combined with other articles:

(a) Any cigar lighter having a lighter mechanism consisting of an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with a snuffer positioned on one side of the wheel and a finger piece positioned on the other side of the wheel, the finger piece being designed to raise the snuffer and revolve the wheel when pressure is applied downwardly on the finger piece and to cause the automatic closing of the snuffer and extinguishing of the flame when such downward pressure is released, the lighter mechanism having substantially the appearance of the mechanisms of exhibits 4 or 31 in this investigation.

(b) Until and including June 11, 1945, cigar lighters patented in United States Letters Patent Reissue No. 19023, except where the importation is made under license of the registered owner of said United States Letters Patent.

the Tariff Act of 1930 (19 U. S. C. § 1337),[2] which prohibited the entry into the United States of certain cigar lighters.

It appears from the order of the President that the Art Metal Works, Inc., of Newark, N. J., filed a complaint with the United States Tariff Commission, pursuant to section 337, *supra*, asking relief from unfair methods of competition and unfair acts in the importation of certain cigar lighters. Thereupon, the Tariff Commission made an investigation and afforded appropriate hearings to interested parties, in pursuance of law, and made its report to the President.

---

[2] SEC. 337. UNFAIR PRACTICES IN IMPORT TRADE.

(a) UNFAIR METHODS OF COMPETITION DECLARED UNLAWFUL.—Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are hereby declared unlawful, and when found by the President to exist shall be dealt with, in addition to any other provisions of law, as hereinafter provided.

(b) INVESTIGATIONS OF VIOLATIONS BY COMMISSION.—To assist the President in making any decisions under this section the commission is hereby authorized to investigate any alleged violation hereof on complaint under oath or upon its initiative.

(c) HEARINGS AND REVIEW.—The commission shall make such investigation under and in accordance with such rules as it may promulgate and give such notice and afford such hearing, and when deemed proper by the commission such rehearing, with opportunity to offer evidence, oral or written, as it may deem sufficient for a full presentation of the facts involved in such investigation. The testimony in every such investigation shall be reduced to writing, and a transcript thereof with the findings and recommendation of the commission shall be the official record of the proceedings and findings in the case, and in any case where the findings in such investigation show a violation of this section, a copy of the findings shall be promptly mailed or delivered to the importer or consignee of such articles. Such findings, if supported by evidence, shall be conclusive, except that a rehearing may be granted by the commission and except that, within such time after said findings are made and in such manner as appeals may be taken from decisions of the United States Customs Court, an appeal may be taken from said findings upon a question or questions of law only to the United States Court of Customs and Patent Appeals by the importer or consignee of such articles. If it shall be shown to the satisfaction of said court that further evidence should be taken, and that there were reasonable grounds for the failure to adduce such evidence in the proceedings before the commission, said court may order such additional evidence to be taken before the commission in such manner and upon such terms and conditions as to the court may seem proper. The commission may modify its findings as to the facts or make new findings by reason of additional evidence, which, if supported by evidence, shall be conclusive as to the facts except that within such time and in such manner an appeal may be taken as aforesaid upon a question or questions of law only. The judgment of said court shall be final.

(d) TRANSMISSION OF FINDINGS TO PRESIDENT.—The final findings of the commission shall be transmitted with the record to the President.

(e) EXCLUSION OF ARTICLES FROM ENTRY.—Whenever the existence of any such unfair method or act shall be established to the satisfaction of the President he shall direct that the articles concerned in such unfair methods or acts, imported by any person violating the provisions of this Act, shall be excluded from entry into the United States, and upon information of such action by the President, the Secretary of the Treasury shall, through the proper officers, refuse such entry. The decision of the President shall be conclusive.

(f) ENTRY UNDER BOND.—Whenever the President has reason to believe that any article is offered or sought to be offered for entry into the United States in violation of this section but has not information sufficient to satisfy him thereof, the Secretary of the Treasury shall, upon his request in writing, forbid entry thereof until such investigation as the President may deem necessary shall be completed; except that such articles shall be entitled to entry under bond prescribed by the Secretary of the Treasury.

(g) CONTINUANCE OF EXCLUSION.—Any refusal of entry under this section shall continue in effect until the President shall find and instruct the Secretary of the Treasury that the conditions which led to such refusal of entry no longer exist.

(h) DEFINITION.—When used in this section and in sections 338 and 340, the term "United States" includes the several States and Territories, the District of Columbia, and all possessions of the United States except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam.

The order of the President recites, among other things, that "The record of the hearings and findings of the Tariff Commission has established to my satisfaction the existence of unfair methods of competition or unfair acts within the meaning of said Section 337." Accordingly, the order of the President directed the Secretary of the Treasury to exclude from entry into the United States the following cigar lighters, whether or not attached to or forming parts of or combined with other articles:

(a) Any cigar lighter having a lighter mechanism consisting of an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with a snuffer positioned on one side of the wheel and a finger piece positioned on the other side of the wheel, the finger piece being designed to raise the snuffer and revolve the wheel when pressure is applied downwardly on the finger piece and to cause the automatic closing of the snuffer and extinguishing of the flame when such downward pressure is released, the lighter mechanism having substantially the appearance of the mechanisms of exhibits 4 or 31 in this investigation.

(b) Until and including June 11, 1945, cigar lighters patented in United States Letters Patent Reissue No. 19023, except where the importation is made under license of the registered owner of said United States Letters Patent.

T. D. 51238, *supra,* continued the effective operation of the foregoing order to June 11, 1952, by reason of Private Law 554, 78th Congress (58 Stat., Part 2, p. 1095), which extended the life of reissue patent No. 19023 for 7 years.

No contention is made by plaintiff concerning the constitutionality of section 337, *supra.* That question appears to have been laid at rest in *In Re The Orion Co.,* 22 C. C. P. A. (Customs) 149, T. D. 47123. See also *In Re Northern Pigment Co. et al.,* id. 166, T. D. 47124. Neither is the section assailed as embodying an unlawful delegation of legislative power, doubtless recognizing the effect of *Frischer & Co. (Inc.) etc.* v. *United States,* 17 C. C. P. A. (Customs) 494, T. D. 43964, which dealt with section 316 of the Tariff Act of 1922, a prototype of section 337, *supra.* Note also *Hampton* v. *United States,* 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in *J. W. Hampton, Jr., & Company* v. *United States,* 276 U. S. 394.

Before addressing ourselves to the real merits of the case, there are certain preliminary questions which require our consideration.

At the trial, counsel for the defendant raised the objection that this court is without jurisdiction to decide this case upon the merits. The ruling on the motion was reserved for this division of the court. Counsel for the plaintiff in their brief have presented very cogent reasons in support of our jurisdiction. However, counsel who prepared the brief for defendant makes no reference to the matter, and we assume that upon mature reflection defendant is satisfied that our jurisdiction has been properly invoked. Since neither silence nor consent of the parties can confer jurisdiction, it becomes an imperative

and a primary duty of the court to inquire whether its jurisdiction does embrace this controversy.

Section 514 of the Tariff Act of 1930 (19 U. S. C. § 1514) reads in part:

* * * all decisions of the collector [of customs], including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and *his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws,* * * * shall, upon the expiration of sixty days after the date of such * * * decision, * * * be final and conclusive upon all persons * * * *unless the importer,* consignee, or agent of the person * * * *seeking such entry or delivery, shall, within sixty days after, but not before such* * * * *decision,* * * * *file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each* * * * *decision,* * * * *the reasons for the objection thereto.* * * * [Italics supplied.]

It not being disputed that the protest herein is against the decision of the collector excluding the imported Seigneur lighter from entry or delivery, it seems clear to us that plaintiff properly availed itself of the remedy described in section 514, *supra.*

Section 515 of said act (19 U. S. C. § 1515) provides that:

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part * * *. If the collector shall, upon such review, affirm his original decision, * * * then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. * * *

In view of the foregoing circumstances, we are of the opinion that plaintiff has properly invoked the jurisdiction of this court and the motion to dismiss is denied.

At the trial plaintiff stated that "* * * the only issue before this court, as we see it, is whether or not this lighter, this Seigneur lighter, comes within the Aronson re-issue patent, which is the basis for the exclusion order." Further, plaintiff stated: "That is a question which, as I see it, merely requires the comparison of the structure of the lighter with the elements of the patent as set forth in patent claims, and I understand for the purpose of this proceeding, that the Government does not desire to examine into any claims other than Claims 10 to 13; 15, 16 and 17." To this statement, counsel for the defendant assented.

Consequently, reduced to its simplest terms, the case presents for our determination the question whether the imported article known as the Seigneur cigarette lighter comes within the language of the proclamation of the President promulgated in subparagraph (b) of T. D. 47001, *supra,* "cigar lighters patented in United States Letters Patent Reissue No. 19023, * * *."

During the trial numerous exhibits (excepting exhibit 13) were offered in evidence by plaintiff. Some of them were admitted, while others were marked for identification, their admissibility to be determined here.

Exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 13, which were received in evidence during the trial, consist of the following:

Exhibit 1, the protest of plaintiff.

Exhibit 2, the package in which the shipment was received.

Exhibit 3, the Seigneur lighter itself.

Exhibit 4, a letter dated January 24, 1950, addressed to plaintiff by "W. F. Donnelly," who, it appears from exhibit 1, is deputy collector of customs at Washington, D. C.

Exhibit 5, a one-page circular advertising the Seigneur cigarette lighter.

Exhibit 6, the snuffer of the lighter with the spring removed.

Exhibit 7, the Aronson patent, original No. 1,673,727, 6/12/28, reissue application 10/11/33, serial No. 693,195, bearing reissue No. 19023, 12/12/33, extended by Private Law 554, 78th Congress.

Exhibit 8, an enlarged reproduction of the drawings in reissue patent No. 19023.

Exhibit 13, introduced by the defendant, is similar to exhibit 6, except that it includes the spring which was removed from exhibit 6 and has a cutout to give an inner view of the mechanism.

Exhibits 9, 10, 11, and 12, which were marked for identification, the admissibility of which was taken under advisement, are as follows:

Exhibit 9 for identification is a drawing describing the operation of the Seigneur lighter. The objection to its reception in evidence is overrruled and it is received in evidence as exhibit 9.

Exhibit 10 for identification is the report of the Tariff Commission to the President, No. 72, Second Series, made pursuant to section 337, *supra*. While such a report might be admissible for the purpose of establishing whether or not the external requirements of the statute have been complied with by the Commission, it does not appear to have been offered for that purpose. Moreover, it seems not to be disputed that the requirements of the statute were complied with. Hence, we deem the report immaterial and, therefore, sustain the objection to its admission as evidence. *William A. Foster & Co. (Inc.) et al. v. United States*, 20 C. C. P. A. (Customs) 15, T. D. 45673. In holding that the trial court properly excluded from evidence the report of the Tariff Commission, the court said in the *Foster* case, *supra:*

\* \* \* In so concluding, it will not be understood that the court is establishing a rule that, in all cases, such reports are inadmissible. There may be cases where such reports may be competent *to prove essential jurisdictional facts*, herein discussed. \* \* \* [Italics supplied.]

It may be noted in passing that the report of the Tariff Commission is a public document of such a nature that it is a matter of judicial notice. *United States* v. *Best & Co., Inc., Bonwit Teller & Co.,* 24 C. C. P. A. (Customs) 220, T. D. 48667.

Exhibit 11 for identification is a copy of the Baumbach patent, and exhibit 12 for identification is a sample of the Baumbach lighter. Objections to the reception of said exhibits 11 and 12 for identification in evidence are sustained.

In considering the real issue raised by the protest, we have been greatly aided by the elaborate and scholarly briefs filed by counsel for both sides.

At the trial two highly qualified witnesses, both of whom were well versed in the scientific field of patent technology and interpretation, gave their testimony. One was called by the plaintiff and the other by the defendant. Each one testified in detail with respect to the mechanical construction, operation, and relative merits of the Seigneur lighter as well as of the Ronson lighter which they examined with great particularity in the light of pertinent claims (10 to 13 and 15 to 17, inclusive) of reissue patent No. 19023.

It would serve no useful purpose to set forth the testimony in detail. Suffice it to say that plaintiff's witness was clear in his opinion that the Seigneur lighter did not violate the Aronson claims in the sense of patent technology and hence did not infringe the Aronson patent.

Defendant's witness, with equal assurance, expressed the opinion that the Seigneur ligher was so constructed and operated as to invade illegally the Aronson claims and to constitute an infringement of the Aronson patent.

We shall first describe the Ronson ligher and then examine the Seigneur lighter for purposes of comparison and identity of construction and operation. Since we are not favored with a physical exhibit of the Ronson lighter, we shall in our description of it depend upon an examination of the terms of reissue patent No. 19023 (exhibit 7), aided by an enlarged reproduction of the drawings contained therein (exhibit 8).

Looking at Fig. 3 of the drawings in exhibit 8, it will be observed that the article has a snuffer (51), an abradant wheel (26), and a finger piece (46) along the top of the lighter, and in the order named, viewed from left to right, the snuffer and the abradant wheel being so mounted as to pivot about a shaft (13) as an axis. Turning to Fig. 5, the finger piece is also mounted so as to pivot about an axis (39), said finger piece being provided with teeth (45) which engage teeth (50) affixed to a snuffer, as shown in Fig. 6 of the drawing. The lighter is also provided with a pawl (34) in Fig. 2 which engages ratchet teeth (35) on the abradant wheel (26). A shower of sparks is produced by the rotation of the abradant wheel resulting from the

engagement of the ratchet teeth with the pawl, causing the engagement of the wheel with the flint or pyrophoric member (20), which is pressed against the undersurface of the wheel as illustrated in Fig. 3.

To produce a light, the user presses down on the finger piece (46), and almost instantaneously the teeth (45) on the finger piece engage the teeth (50) on the snuffer, tilting it upwardly as in Fig. 3 to expose the wick. At the same time the pawl (34) is caused to rotate, and as it catches one of the ratchet teeth (35) the sparking wheel rotates to project sparks on the wick which has been exposed by the snuffer, producing a light.

It may be pointed out here that in *Art Metal Works, Inc.* v. *Abraham & Straus, Inc.*, 2 Cir., 61 Fed. (2d) 122, sometimes referred to as the "Roller Bearing" case, the United States Circuit Court of Appeals stated that:

> Aronson made an advance over the prior development of cigar lighters by his arrangement of operating parts, so that the wick was at the side furthest away from the finger of the operator; *the snuffer, abradant wheel, and thumb piece were on the top of the receptacle;* all three were free from a cumbersome outer housing and the manual actuation of snuffer and abradant wheel by the finger piece through gears enabled the operator to obtain just the shower of sparks he might require at the moment. * * * [Italics supplied.]

We shall now examine the Seigneur lighter (exhibit 3) in conjunction with exhibits 6 and 13 illustrating the snuffer portion removed from a lighter, and exhibit 9, an enlarged diagram containing drawings illustrative of the construction of the Seigneur lighter.

As in the case of the Ronson lighter, the Seigneur device has a snuffer, abradant wheel, and finger piece mounted in a row along the top of the lighter casing and in the same order as described in the reissue patent. As in the patent, when it is desired to use the Seigneur lighter, the finger piece is manually pressed downwardly. At the end of the Seigneur finger piece, as it appears in fig. 1 of exhibit 9, a tooth or projection is provided which overlaps a complementary tooth or projection extending out from the left of the snuffer. In the patent the finger piece is provided with teeth which overlap others on the snuffer (Figs. 5 and 6 of the patent), whereas in the Seigneur lighter there is one tooth on the finger piece and one cooperating tooth on the snuffer. With a similar arrangement before it, the Circuit Court of Appeals in the case just above cited said:

> * * * We think so close a physical and mechanical approximation to the claims of the patent as is found in the "Roller Bearing Lighter" is an infringement * * *.

Expressed in simpler terms, each of the lighters which we have been describing is a combination of parts which has been characterized as the "one, two, three arrangement," 61 Fed. (2d) 122.

To carry the similitude further, each lighter has a finger piece, transmission, pawl, abradant wheel, wick, and snuffer, and by downward pressure on the finger piece on either of the devices light is produced instantaneously.

Plaintiff contends that there is a sharp line of distinction between the two lighters, first, in that manual downward pressure on the finger piece of the Ronson lighter is transmitted to the abradant wheel and snuffer by a gear system, whereas in the Seigneur lighter the downward pressure of the finger piece and the action of a toothed arrangement cause the release of a spring whose stored-up energy motivates the snuffer and wheel and causes light to be produced. It is also urged by plaintiff that the complete act of producing light in the Ronson lighter is promoted by continuous pressure on the finger piece, whereas in the Seigneur lighter downward pressure of the finger piece operates a toothed combination to release a spring, which latter is the actuating force to produce light. It is upon these structural features that the two witnesses are in direct conflict. Whereas plaintiff's witness insists that production of light is due to the storage of energy in the spring, defendant's witness is equally insistent that a combination of manual and mechanical energy actuates the lighting feature, testifying that:

* * * we have first during the initial part of that movement purely manual pressure producing the actuation. Then for almost all of the remainder of that opening movement we have manual pressure and spring pressure acting together, both of them being active. Then for the final few degrees of that opening movement, we have spring pressure continuing on for a few degrees after the manual pressure has been released.

However, it is believed that the distinction sought to be drawn here by plaintiff is not of compelling importance.

In *Art Metal Works, Inc.* v. *Abraham & Straus, Inc.*, 2 Cir., 107 Fed. (2d) 940, the court observed:

The defendant argues that the critical distinction between the "Trig-a-lite" and "Roller Bearing" lighters is that in the former the finger piece upon being pressed down does not rotate the wheel "by manual pressure to ignite the wick", as called for by claim 7, and that on the contrary the wheel is rotated by the stored up energy of the coiled spring. Rotation by manual pressure is also called for in Claims 13 and 14.

The court then proceeded to say:

We do not regard this difference as sufficient to enable the defendant to escape infringement of the claims. The spring is placed in series with what is as fully a rack and gear as the mechanism in Roller Bearing, which we held to be such in Art Metal Works v. Abraham & Straus, 2 Cir., 61 F. 2d 122. A pin attached to the finger piece serves to trip a latch which brings the spring into action that finally operates the abradant wheel and produces the spark. It is true that in "Trig-a-lite" the movement of the wheel is more speedy and constant than in "Roller Bearing" *and is not finally controlled by manual pressure.* But even if the mechanism that produces the spark in "Trig-a-lite" is mechanically different from

that in "Roller Bearing" the difference consists merely in the addition of a latch to effect a release of the stored up energy of the spring. *This simple addition of a spring and latch involves such a ready evasion of the gear means indicated by the patent as to deprive the invention of all security.* Even though in view of the prior art the patent be a narrow one it ought not to be so limited in equivalents as to render the invention practically worthless. *In all these claims the manual pressure starts the movement finally resulting in the rotation of the abradant wheel and the raising of the snuffer so that the results are practically identical and the means are obvious equivalents.* [Italics supplied.]

Plaintiff in its brief states that "During the prosecution before the Bureau the government placed great emphasis on the above decision" and apparently seeks to minimize its weight as an authority, saying that "it should be noted that even the Abraham & Straus case, supra, was considered very doubtful, and so learned a judge as Hand dissented." This concept cannot survive if we pause to reflect that the judgment of the majority of a Circuit Court of Appeals, not reversed, is just as effective, authoritative, and binding as if it had been announced by a unanimous court.

It is observed, of course, that there is a difference in the mechanical transmission of force from the finger piece to the snuffer and abradant wheel to produce light in the lighters under consideration. However, this distinction in itself is not enough to avoid infringement of the Aronson patent. *Art Metal Works, Inc.* v. *Abraham & Straus, Inc.,* 2 Cir., 107 Fed. (2d) 940.

Incidentally, this case explains away the observation on page 4 of the report of the Tariff Commission (exhibit 10 for identification) which reads:

* * * In *Art Metal Works, Inc.,* v. *Abraham & Straus, Inc.,* 2 Fed. Supp. 677, 679, the United States District Court for the Eastern District of New York, after the decision of the Circuit Court of Appeals, *supra* [*id.,* 61 Fed. (2d) 122], ruled that the question of infringement of a so-called "Trig-a-lite" lighter, which was a spring-actuated lighter and in which the spring formed the connection between the finger piece and the snuffer, was not so clear as to warrant a preliminary injunction.

To quote further from the report—

* * * The Commission is of the opinion that a lighter in which the chief force lifting the snuffer and revolving the wheel is derived from energy which has been stored up in a spring is not operated by manual pressure as required in claims 2, 4, 5, 7, 8, 10, 11, 12, 13, 14, and 15 of the patent, nor do the spring operated exhibits fall within the other claims of the patent.

As above indicated, however, the Circuit Court of Appeals in the case of *Art Metal Works, Inc.* v. *Abraham & Straus, Inc.,* 107 Fed. (2d) 940, held that the Trig-a-lite lighter did infringe the Aronson patent.

Another difference which has been noticed in the lighters here under consideration resides in the fact that in the Ronson lighter, when the finger piece is released, the snuffer closes, while in the Seigneur lighter

it is necessary to close the snuffer manually.   This feature leads us to an examination of the pertinent claims embodied in reissue patent No. 19023.   At the trial plaintiff stated that the only claims in the patent having a material bearing were Nos. 10 to 13 and 15 to 17, and that "Of those claims, claim 10 is probably the broadest claim and can be taken as typical of what the patent covers."   Claim No. 10 reads as follows:

10.   A pocket lighter having in combination a receptacle, an abradant wheel journalled about a horizontal axis over the top of said receptacle, a pyrophoric member, means retaining said pyrophoric member in contact with said wheel, a wick projecting from said receptacle on one side of said wheel, a finger piece, said finger piece being pivoted on an axis spaced from the axis of the wheel and also being adapted to be pressed downwardly and means whereby the movement of said finger piece is transmitted to said wheel whereby the wheel is operated by manual pressure to ignite the wick.

Claim No. 10, as well as the others above mentioned, is silent with respect to the feature of the Ronson lighter which closes the snuffer, and we do not deem that feature as having any important bearing upon this discussion.

We have carefully examined the authorities cited by the respective parties, but upon the record before us we can not find that the preponderating weight of the evidence favors the plaintiff.   We are convinced that the decisions of the Circuit Court of Appeals in the two *Art Metal Works* cases, *supra*, compel the conclusion that the manufacturers of the Seigneur lighter have not so constructed that device as to avoid infringement of the Aronson patent.

We conclude, therefore, that the Seigneur lighter is "patented in United States Letters Patent Reissue No. 19023" within the meaning of paragraph (b) of the Executive Order, T. D. 47001, as amended by T. D. 51238, *supra*.

The decision of the collector of customs is affirmed, and the protest of plaintiff is overruled.   Judgment will issue accordingly.